Angus M. Perkerson, sheriff, plaintiff in error, *vs.* Barton H. Overby *et al.*, defendants in error.

When it appeared from the answer of the sheriff, which was not traversed, that a city lot had been levied on by him, and an undivided half thereof claimed by a third person on the day of sale, and that he proceeded to sell the other half without re-levying and re-advertising, and that it was bid off by the plaintiff in *fi. fa.*, and that he, the sheriff, thinking it doubtful that he could lawfully sell the undivided half without levying and advertising again, declined to make a deed to the purchaser, and to receive the money for the property sold, and when it did not appear that the purchaser objected to the payment of the money, and the reception of the deed, and when the plaintiffs in older *fi. fas.* ruled the sheriff for the money:

*Held*, that the rule was rightly made absolute, and the judgment making it absolute should not be arrested.

See concurring opinion of Bleckley, Judge.

Sheriffs.   Levy and sale.   Before Judge Peeples.   Fulton Superior Court.   October Term, 1876.

Reported in the opinions.

P. L. Mynatt, for plaintiff in error.

W. T. Trippe; McCay & Trippe, for defendants.

JACKSON, Judge.

B. H. and N. Overby and others, plaintiffs in *fi. fa.*, ruled Perkerson, the sheriff of Fulton county, for money alleged to be in his hands in law, under the facts following: John H. James had had a *fi. fa.* on a judgment younger than the Overbys' and others, levied upon a city lot in Atlanta, described as a whole lot. On the day of sale, an undivided half thereof was claimed by a third person, and the sheriff, without levying again or re-advertising, sold the other undivided half, and John H. James bought it. The sheriff, in answer to the rule, stated that he became doubtful of his right to sell the other half without re-advertising, and therefore declined to make a deed to James, and to receive the money for the half lot. It does not appear from the record, that James objected to taking the deed and paying the money, but it appears that the sheriff declined himself to make the deed and receive the money. The court below, at the instance of the plaintiffs in older judgments, made the rule absolute against the sheriff, and at the same term, afterwards, refused a motion to arrest the judgment which made the rule absolute. The judgment making the rule absolute, and the refusal to arrest it, are the rulings excepted to.

Can a sheriff sell an undivided half lot under a levy of the whole lot?

The Code, §3640, requires the sheriff, when he levies, to describe plainly the property levied on, and the amount of the interest of defendant therein. But it seems to be well settled that less than the whole levy may be sold. In 20 *Ga.*, 591, Judge Lumpkin says that "both at sheriffs' and administrators' sales, nothing is more common than to sell less property than is advertised. And we doubt not the right of the administrator, in this case, to limit the sale to twenty acres, or any other quantity." Well, if a divided half can be sold under a levy of the whole, why cannot an undivided half? The land described in the levy is more,

and the interest sold would be less, in both cases, than that levied on. If half were claimed—a divided half—the other half could be sold; though the interest described in the levy were the whole lot. So an undivided half, it would seem, under the decision in 20 *Ga.*, might be sold. It is covered by the levy. It is less than the levy. It is a part of the land levied on, capable of being partitioned, and just as clearly defined and capable of description in a deed, as if marked with metes and bounds.

*Whatley vs. Newsom*, 10 *Ga.*, 77, simply decides that the interest sold must be capable of being described; and in that case, "the interest only of Whatley was levied on and sold, and conveyed by the deed, without specifying what that interest was." It would seem, if the interest had been specified, it would have conveyed the title; and here the interest sold was an undivided half, and it seems to have been included in the description of the land in the levy, and would hence pass the defendant's title.

But however this may be, it does not seem that the purchaser made objection to taking the deed and paying the money; why, then, should the sheriff not make the deed, and receive it, and hold it, subject to the order of the court, especially as a junior plaintiff in *fi. fa.* bought it, and older judgments were placed in his hands? We think that it was his duty to take the money and make the deed, and if legal questions arose thereon, let the several plaintiffs in *fi. fa.*, and the purchaser and defendant, if they saw fit, or any of them saw fit, make those questions.

It is said, however, that on this money rule, these plaintiffs must show injury. We think they do. The land of the defendant was sold. If they levied on it again, they might, and probably would, meet a lawsuit. It is much safer, we think, that the sheriff shall bring the money into court and hold it subject to the order of the court and the rights of all parties in respect thereto, than to act in behalf of one of the parties as a sort of guardian of that party's interest, without even a request from that party so to do.

We can see how there might be collusion between the sheriff and the parties if a door should be left open inviting it, and we think it had better be kept shut. We, therefore, affirm the judgment.

Judgment affirmed.

BLECKLEY, Judge, concurring.

Upon a bare doubt, I do not feel justified in dissenting from a judgment of affirmance. In this case, however, my doubt is so near a conviction, that while I yield it, my sense of duty obliges me to disclose its existence, and to indicate the grounds of it. If the sheriff proceeded to sell illegally, and discovered his error before accepting the money and making a conveyance, he was, I think, at liberty to decline to consummate the sale and take its fruits. 42 *Ga.*, 629. On the assumption that he made a mistake of law, he was not too late to correct the mistake—certainly not, as against the movants in this rule. They had not required him to sell. Their execution had not been levied, nor was he in any default for not levying it. Their whole claim was upon the proceeds of the sale. For them to have now any rights against the sheriff, there must have been either an illegal sale which was complete to the extent of executing a conveyance or actually receiving the purchase money, or a legal one which, if not complete, was in a state of incompleteness by reason of some improper act or omission of the sheriff, occurring after the property was exposed to sale and bid off. Thus far, my mind is free from all doubt; but here the doubt begins : Was the sale, as far as it went, legal? Ought the sheriff to have consummated it, by executing a conveyance, and collecting the purchase money? The levy was upon the land itself ; that is, upon an estate in severalty. The sale was of an undivided half ; that is, upon an estate in common. The precise estate sold had neither been levied upon nor advertised. If it had been, persons might have attended and competed at the

sale, whose attendance was not induced by the advertisement as published. Thus, the departure, in making the sale, from the terms of the levy and advertisement, may have occasioned injury to the defendant in *fi. fa.*, and to other interested parties. . The Code, § 3640, is express, that the entry of levy shall plainly describe, not the property only, but also the amount of the defendant's interest therein. Until the claim was interposed, there had been no step taken which looked towards selling an undivided interest. Could the sheriff, after receiving the claim, legally expose to sale an estate in common, without stopping to cut down the levy or to re-advertise? If he had on his hands a levy that, by reason of the interposition of a claim, he could not execute, as a whole, with respect to a single foot of the land embraced in it, should he not have returned the papers to the court for a trial of the claim, as directed by section 3736 of the Code, at the same time postponing the sale, as directed by section 3727? Or, if this was not his duty, should he have received the claim at all, as it did not affirm title in the claimant to the *property* levied upon, but only to an undivided estate or interest therein? Throughout the claim laws (Code, section 3725 to 3746), is not the word property used in the sense of thing, and never in the sense of interest or estate? And is the remedy afforded by the claim laws applicable, where the claimant or claimants do not claim the thing itself, but only a joint interest in it with the defendant in execution? Suppose one-half or one-tenth of a horse, or of any like property, to be claimed, what is the sheriff to do? What is an administrator or a trustee to do in similar cases? It would certainly tend to great confusion, for officers or agents of the law to sell a less estate in things than the proprietor really owned, or to sell a part of his interest at one time and the balance at another. It is not clear, because less property can be sold than is levied upon and advertised, that a less estate can be sold. To cut up goods or lands into lots or parcels, is not uncommon; but to produce a divided ownership by legal pro-

cess is, and ought to be, of rare occurrence. If a claim can be used to arrest the sale of an undivided half, when the whole is levied upon, would it not be better to sell nothing until it is ascertained what estate ought to be sold?